## Kemner *v.* Steckel, Appellant.

*Negligence—Automobiles—Collision with wagon—Case for jury.*

In an action to recover damages for personal injuries it appeared that the plaintiff, while driving a wagon along a country road, was struck by a motor truck of the defendant. The evidence on the part of the plaintiff established that the defendant's chauffeur had attempted to pass him, but had suddenly applied his brakes, causing the truck to skid, striking the wagon of the plaintiff and overturning it.

Under such circumstances, the case was for the jury, and a verdict for the plaintiff will be sustained.

Argued December 1, 1924. Appeal, No. 80, Oct. T., 1924, by defendant, from judgment of C. P. Montgomery

Co., Nov. T., 1922, No. 205, on verdict for the plaintiff in the case of John Kemner v. V. H. Steckel.  Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Trespass to recover damages for personal injuries.  Before MILLER, P. J.

The facts are stated in the following opinion of the court below:

This was a suit for the recovery of damages for personal injuries and to property arising out of a collision on a public highway between the horse and wagon of the plaintiff and the motor truck of the defendant.  Plaintiff was driving and the truck was being operated by defendant's servant at the time of the accident.  The verdict was for the plaintiff.

The sixteen reasons upon which the motion for a new trial is based may be conveniently discussed in this opinion under the same three groups in which they were assembled by counsel for defendant at the oral argument and in his written brief.

1. The 1st, 2d, 3d, 4th, and 6th reasons all relate to the "sudden peril" aspect of the case.  Contributory negligence by plaintiff was neither claimed nor attempted to be shown, so that, on the question of liability, the case went to trial on the clean-cut issue of whether or not the accident was caused by the negligence of defendant's driver.  Both the plaintiff and his companion were rendered unconscious by the collision and, as a consequence, much of the testimony as to just how it occurred came from the truck driver.

Mr. Kemner and Mr. Dennler were, on a clear day and in the daytime, traveling slowly toward the south on the wide state highway known as the "Gravel Pike." The road was straight and level and the macadam was 23 feet wide with several feet of sod or grass on its right or westerly side.  They were riding in a covered Dearborn wagon with curtains on its rear and sides.  Mr.

Hemming, the driver of the truck, who was alone, overtook them and intended to pass. He blew his horn when still about fifty feet in the rear of the wagon and it, already being driven with its right wheels from eighteen inches to two feet on the grass to the right and, therefore, off the macadam, was promptly pulled still further to the right. Between it and the easterly edge of the macadam, there was ample space for two automobiles to pass.

Before Mr. Hemming had committed himself to the act of passing the wagon, he observed an automobile, some 200 or 300 feet away, coming toward him from the south at a speed of about 40 miles an hour. Notwithstanding this, he went ahead, without slackening his own speed of 10 or 12 miles an hour. He testified not only that he knew at the time that the automobile had the right of way but that he could have dropped behind the wagon or stopped within a distance of 20 feet and that he did neither. Instead, he kept right on "a little bit" until, when alongside of the wagon and fearing a collision with the on-coming automobile, he "slammed on his emergency brakes," the truck skidded to the right and the accident occurred. There might have been some doubt under the testimony whether any automobile approaching from the south at all, as there also was as to whether the wagon had been struck by the truck skidding and sliding into its side, or by being bumped from its rear. The road bed was dry.

The defendant tried the case on the theory that these circumstances established such a sudden emergency confronting Mr. Hemming that the trial judge should, as a matter of law, have declared that they showed no negligence on his part and taken the case from the jury. The plaintiff contended to the contrary that they did not create a sudden emergency within the meaning of the well-established principle of law at all, but, even if they did, the danger was of his own creation, he had gotten himself into it through his own fault and the case was

for the jury under proper instructions from the court. We inclined to the latter view at the trial and have not been convinced of error in doing so. The charge, beginning on page 182, and ending with page 184, covers this aspect of the case. A sudden emergency which confronts one and requires hasty action, if not caused by the fault of the actor, of course lowers the standard of care by which his conduct is to be measured, but it is only in a clear case—one in which the facts are not in dispute—and that at bar does not belong to this class, that the trial judge may take the question from the jury. This case was properly left to the jury and we have no quarrel with their verdict.

2. The 7th, 8th, 9th, and 10th reasons allege error in the answers to specified points submitted by the defendant. These requests all related to the alleged skidding of the truck and the answers thereto were in substantial accord with the law.

Drivers of automobiles are chargeable with knowledge that the car may skid: McGettigan v. Quaker City Auto Co., 20 Pa. D. R. 47; 48 Pa. Superior Ct. 602. The measure of duty, the degree of care, and corresponding liability are to be determined by the jury in the light of the surrounding circumstances: Van Winckler v. Morris, appel., 46 Pa. Superior Ct. 142. As was said in Schoepp v. Gerty, appel., 263 Pa. 538, "the action of the car upon the application of the brakes, and the position in which it was at the time it finally stopped, might warrant the inference that it was traveling at a much higher speed than stated by the driver, or that, regardless of the question of actual speed, he failed to have it under such control as the condition of the street and the position of plaintiff required: Banks v. Shoemaker, 260 Pa. 280. . . . . . .The driver was certainly aware of the slippery condition of the streets and presumably of the tendency of his truck to skid upon sudden application of the brakes; . . . . . ."

The sudden peril of which the defendant's driver testified did not, as a matter of fact, materialize. The oncoming automobile, if there at all, passed in safety and went on its way. It did no damage. If the jury had believed this witness and found that he had applied the brakes suddenly in an emergency to avoid the automobile and by reason of the application of the brakes, the truck had skidded and struck plaintiff's wagon, there might have been ample ground for their holding that he was not guilty of negligence: Moir v. Hart, 189 Ill. Appeals 566. But if they found that his own heedlessness had helped create the dangerous situation in the first place and then, having placed himself in it, he slammed on his emergency brakes, knowing when he did so, as the law required him to do, that as a consequence, his truck was liable to skid, and it did skid and cause the damage of which plaintiff complains, there would have been sufficient ground for their holding his employer liable. This is evidently what the jury did.

3. The 5th, 11th, 12th, 14th, 15th, 16th, and 17th reasons all relate to alleged errors committed during the progress of the trial in connection with plaintiff's claim and proof of his partial loss of earning capacity as an element of damages.

The case is exceptional. The plaintiff was shown to have been in good health and physical condition and between 64 and 65 years of age when the accident happened. He owned, occupied and personally managed a large farm and his wife and he did much of the work upon it. According to his contention, while after the accident, his ability to manage the establishment remained as before, he was left in such physical condition, as a direct result of it, that his injuries were permanent and his earning capacity was partially impaired. He now is able to do only the lighter work of the place and, even as to that, he is strong enough to attend to it for only about 25% of the usual time. He had kept no books or other records of his business as a farmer.

Much, in our opinion, to the advantage of the defendant, as well as in accordance with the law, as we understand it, he made no claim for loss of profits, however. The capital investment in his business, his own and his wife's services, the help he employed, the stock he kept on the place, and even nature itself, in the ordinary increase of that stock and the growth of his crops, all had combined in producing the results of the operation of that business. All these contributing factors remained after the accident and the only one that was affected by it was the plaintiff in his impaired ability to do manual labor on the farm. The question, therefore, arose at the trial as to how his damages for loss of earning power should be shown. The law, of course, requires production of the best evidence of a fact, but what was the best evidence of the extent of this loss? The plaintiff, in resolving this difficulty, elected, first to show all the related circumstances, as just set down, and then, secondly, to submit testimony as to the cost or value of ordinary, common farm labor in the neighborhod at the time. He did this, no doubt on the theory that as no standard of value more favorable to the defendant could be conceived, the latter would be in no position to complain. The case was tried on this theory and testimony was heard under objection to the effect that such value was at the rate of $3.50 per 10-hour day when such labor was procurable at all.

The defendant still insists that this testimony was not competent and that, as a consequence, a new trial should be granted. It is to be observed that, while no duty rests on him to do so, he is careful to avoid suggesting what he regards as the proper character of proof in such a case.

We paid particular attention to the oral argument of defendant's counsel on this branch of the case and, since then, have carefully studied his written brief and considered the cases referred to in it. The related principles of law are, of course, well settled, but it is impossible to

escape the conclusion that he had overlooked the importance of first determining the facts of a case before attempting to apply those principles to it.   For instance—the continuous labor of the plaintiff, fairly worth $3.50 a day, went, before the accident, into his business.   If he had not worked on his own farm, he could have earned that sum, at the least, working for others.   His earning capacity as a laborer was, before he was injured, that sum per day.   Now we are not trying the question whether he did, or did not, employ others before or after the accident.   In this connection, the actual and only inquiry is,—to what extent was plaintiff damaged by reason of defendant's negligence?   This question cannot be answered without information concerning the fair value of services such as he was able to render (Goodhart v. Pa. R. R. Co., 177 Pa. 1).   It was shown without contradiction, that, able and required constantly to do a full day's work before the accident, after it occurred, and as a consequence of it, he could labor for not more than $2\frac{1}{2}$ hours in any one day and, even then, could perform only the lighter tasks about the farm.   It was, therefore, argued logically that he had suffered at least a 75% impairment in earning power and it was demanded that he be compensated for such loss on the extremely low basis of a laborer.

Had the plaintiff sought to recover for this loss as a practical farmer, or farm manager, and called witnesses to testify to the value of his services as such it is a fair assumption based on common knowledge and experience, that the measure of such value would have been much higher than that employed here.   All that the law requires is that the evidence as to damages shall be so reasonably certain that they may not be based merely upon speculation or conjecture.   Where there are two or more possible measures of damages, arising under the circumstances of the particular case, that measure will be adopted which causes the least loss to the defendant.

The true basis of a claim such as this is not for loss of earnings but loss of earning power, occasioned by the injury, and the difference between earnings before and after the injury is merely an item of evidence to be considered by the jury in connection with other evidence in determining the extent, if any, the earning power has been reduced: McLaughlin v. Corry City, 77 Pa. 109; Bockelcamp v. Lackawanna, etc., R. R. Co., 232 Pa. 66. The fact that an injured person remains in the same position he occupied before his injury was received at the same salary would be persuasive evidence tending to show his earning capacity had not been seriously impaired. The jury, however, may consider evidence showing his physical condition and the character of the work he performed both before and after the accident, and award damages for loss of his earning power, if such evidence justifies the conclusion that such power had in fact been reduced as a result of the injury: Bockelcamp v. Lackawanna, etc., R. R. Co., supra; Yeager v. Anthracite Brew. Co., 259 Pa. 123; Piper v. Adams Ex. Co., appel., 270 Pa. 54. The real standard by which plaintiff's future earning capacity should be tested is whether his power or capacity to earn has been diminished as a result of the injury: Leonhardt v. Green, 251 Pa. 579; Piper v. Adams Ex. Co., supra.

The loss of earning power and its amount must appear by proper and satisfactory proof and not be left to conjecture, but the mere fact that plaintiff was not a wage earner, prior to the accident, will not prevent him recovering for loss of earning power: Zimmerman v. Weinroth, appel., 272 Pa. 537.

Plaintiff, in our opinion, showed his loss of earning power by proper and satisfactory proof. He was injured only in his ability to perform manual labor and the extent of the impairment was affirmatively shown. This was followed by definite proof of the value of such labor generally. If the jury believed the testimony, and their verdict indicates that they did, they had enough before

them to enable them to estimate his compensation for this element of his damages. His loss in this regard was capable of ascertainment with reasonable certainty.

We are not convinced of substantial error in any of the matters of which defendant complains and his motion for a new trial must, therefore, be overruled. What has been said in its consideration requires the same disposition to be made of the motion for judgment non obstante veredicto. The case was clearly for the jury under the testimony and we are satisfied with their verdict.

And now, 7th February, 1924, after hearing argument and mature consideration, the motions for a new trial and judgment for the defendant non obstante veredicto are both overruled; a new trial is refused; the reasons assigned therefor are dismissed; and the prothonotary is ordered to enter judgment in favor of the plaintiff and against the defendant on the verdict upon payment of the verdict fee.

Verdict for plaintiff in the sum of $2,500 and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court, answers to points and refusal of defendant's motion for judgment non obstante veredicto.

*Arthur S. Arnold,* and with him *Walter M. Shaw,* for appellant.

*Aaron R. Swartz, Jr.,* and with him *John M. Dettra* and *Samuel H. High,* for appellee.

PER CURIAM, February 27, 1925:
This case was zealously tried in the court below, and on the part of the defendant it was urged that under all the evidence, the verdict should be for the defendant. Subsequently, a motion to enter judgment non obstante veredicto was overruled by the court. A new trial was

refused, and judgment entered in favor of the plaintiff on the verdict.

The evidence was conflicting and susceptible of opposite conclusions, but all the testimony was fairly submitted by the trial judge, and on consideration, the motion for a new trial was again refused, in an opinion which convinces us that no substantial error was committed in any of the matters of which the defendant complains.

We agree in this conclusion, and the judgment is affirmed for the reasons given by the trial judge.